HUTSON v. STATE USE OF HEMPSTEAD COUNTY.

Opinion delivered November 1, 1926.

1. JUDGES—CIVIL LIABILITY.—A county judge is not civilly liable to the county for fraudulently allowing claims within the jurisdiction conferred by Crawford & Moses' Dig., § 2279.

2. COUNTIES—ALLOWANCE OF CLAIMS.—County courts act judicially in allowance or disallowance of claims against the county.

3. JUDGES—CIVIL LIABILITY.—So far as civil liability is concerned, no distinction is drawn between the acts of judicial officers which are mistakes and errors committed in good faith and those acts which are committed willfully, knowingly and corruptly.

Appeal from Hempstead Circuit Court; *J. H. McCollum*, Judge; reversed.

*O. A. Graves, U. A. Gentry*, and *Shaver, Shaver & Williams*, for appellant.

*Dexter Bush, Luke F. Monroe* and *Steve Carrigan*, for appellee.

HUMPHREYS, J. This suit was instituted by appellee against appellant to recover $2,510.33 for willfully, knowingly and corruptly allowing a claim for jail cells to his alleged co-conspirator, A. F. Pickett, while acting in his official capacity as judge of the county court of Hempstead County, instead of making the allowance to E. T. Barnum Iron Works, a corporation, that furnished the cells to said county, under a written contract signed "Hempstead County, Owner, by Wash Hutson, County Judge," and approved by A. F. Pickett. The complaint is very long, but the gist is set out in appellee's brief as follows:

"The complaint alleges, among other things, that Wash Hutson, without first advertising for the work of the installing of the jail cells, negligently, carelessly, recklessly, indifferently, unlawfully, and willfully contracted with his co-defendant, A. F. Pickett, to do his work; that Wash Hutson negligently, carelessly, recklessly, indifferently, unlawfully and willfully contracted and agreed to pay the said A. F. Pickett a large price for said work; that Wash Hutson negligently, carelessly,

recklessly, indifferently, unlawfully and willfully, and with full knowledge and understanding of the exorbitant and unjust amount of the claim, examined and allowed to his co-defendant, A. F. Pickett, payment on said cages and for said work; that Wash Hutson at the time knew and had positive affirmative knowledge of the fact that Hempstead County, acting through him, Wash Hutson, county judge, had purchased direct from E. T. Barnum Iron Works the cells and cages, under written contract dated December 5, 1921; that Wash Hutson, with direct and positive knowledge at the time, knew that his co-defendant, A. F. Pickett, had not furnished said cells and cages to Hempstead County, Arkansas, and had no right, title, or interest to the money for same, which belonged solely to the E. T. Barnum Iron Works of Detroit, Michigan, negligently, carelessly, recklessly, indifferently, unlawfully and willfully had two vouchers issued for said claim to A. F. Pickett at the time, one in the sum of $800 and one in the sum of $3,000; that fraud was practiced on Hempstead County by the defendant, Wash Hutson, county judge of Hempstead County at the time, in colluding, conspiring and agreeing with his co-defendant, A. F. Pickett, to allow said claim and order warrants issued for the same, which warrants were appropriated by the said A. F. Pickett; that the said claim or claims of the said A. F. Pickett were allowed by the defendant, Wash Hutson, county judge, with full knowledge and understanding at the time that the defendant, A. F. Pickett, had no right, title, or claim to said amounts, and that said Hempstead County was not liable to him for said amounts.''

Appellant filed a demurrer to the complaint, and, when same was overruled over his objection and exception, he filed a separate answer, controverting the allegations of the complaint.

The cause was submitted upon the pleadings, the testimony adduced by the parties, and the instructions of the court, which resulted in a verdict and a consequent judgment in favor of appellee for $2,510, from which is this appeal.

Appellant requested the court to peremptorily instruct a verdict for him, which request was denied, over his objection and exception, and the cause was sent to the jury under instructions to the effect that appellee was civilly liable if he allowed the claim filed by Pickett, willfully, knowingly, and corruptly, with intent to defraud Hempstead County, while acting in his official capacity.

The testimony introduced by appellee tended to support the allegations of the complaint, and there is substantial evidence in the record in support of the verdict, to the effect that appellant, while acting in his official capacity, willfully, knowingly and corruptly allowed the claim to his co-conspirator, A. F. Pickett, which rightfully belonged to the E. T. Barnum Iron Works, with intent to defraud Hempstead County. After the claim had been allowed, collected and converted to the use of A. F. Pickett, the E. T. Barnum Iron Works sued Hempstead County for the price of the jail cells appellant had bought directly from it for said county, and recovered $2,510, which was afterwards paid by the county. In other words, the county was compelled to pay for the jail cells twice, through the action of appellant in willfully, knowingly and corruptly allowing said claim to his co-conspirator, A. F. Pickett.

Appellant contends for a reversal of the judgment because, under the law, a judicial officer is exempt from civil liability so long as he acts within his jurisdiction and in his official capacity.

There can be no question in this case that appellant was acting within his jurisdiction in the allowance of the claim filed by A. F. Pickett.   Section 2279, C. & M. Digest.

It is also the rule that county courts act judicially in the allowance of claims filed against the county. *State use of Izard County* v. *Hinkle,* 37 Ark. 532; *Monroe County* v. *Brown,* 118 Ark. 524, 177 S. W. 40; *Johnson County* v. *Bost,* 139 Ark. 35, 213 S. W. 388; *Echols* v. *Lincoln,* 154 Ark. 142, 241 S. W. 881.

Reverting to the contention of appellant, that judicial officers are exempt from civil liability when acting within their jurisdiction and judicially, it seems that the rule contended for is universal. 15 R. C. L., page 543, par. 31.

Cooley on Torts, at page 408, says: "Whenever the State confers judicial powers upon an individual, it confers them with full immunity from a private suit; in effect the State says to the officer that those duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the State, and the peace and happiness of society; that, if he shall fail in a faithful discharge of them, he shall be called to account as a criminal; but that, in order that he may not be annoyed, disturbed and impeded in the performance of these high functions, a dissatisfied individual shall not be sufficient to call in question his official action in a suit for damages. This is what the State, speaking by the mouth of the common law, says to the judicial officer."

Our own court, in the early case of *Trammell* v. *Town of Russellville,* 34 Ark. 109, states: "It is a universally recognized principle that one acting judicially in a matter within the scope of his jurisdiction is not liable in an action for his conduct."

In the recent case of *Casey* v. *Casey,* 142 Ark. 246, 218 S. W. 678, our court uses the following language: "The question of the civil liability of a judicial officer for a false arrest or for false imprisonment has been much discussed, both by courts and text-writers. On the one hand, the inviolability of personal liberty except under the forms of the law is involved, and, on the other, the dignity and independence of the judiciary should be considered. It has been frequently said that the general rule applicable to all judicial officers is that, where the officer has jurisdiction of the person and of the subject-matter, he is exempt from civil liability for false imprisonment, so long as he acts within his jurisdiction and in his judicial capacity."

No distinction is drawn in any of the authorities between the acts of judicial officers which are mistakes and errors committed in good faith, and acts committed willfully, knowingly and corruptly, so far as civil liability is concerned.

Appellee complains that the remedy open to taxpayers of becoming parties and contesting claims is not effective, and that on this account judicial officers should respond in damages for their willful and corrupt misconduct. Such officers are criminally responsible for their corrupt acts, so a county is not without effectual remedy.

On account of the error indicated the judgment is reversed, and the complaint is dismissed.